J-S51030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANTOINE WILLIAMS | |
| Appellant | No. 2698 EDA 2014 |

Appeal from the Judgment of Sentence August 19, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010129-2013,
MC-51-CR-0011641-2013

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                  **FILED OCTOBER 01, 2015**

Antoine Williams appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County, following his convictions for robbery – theft by removing money from a financial institution by making a demand on an employee,[1] and related offenses.

The trial court set forth the factual history of this case as follows:

On December 9, 2011, Ms. Delnisha Sims was working as a bank teller inside a branch office of Sovereign Bank located at 101 East Olney Avenue in Philadelphia when, at about 5:18 p.m., she looked over to her co-worker, Elsa Febes, and noticed that Ms. Febes was red in the face, shaking and appeared to be scared.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(vi).

Suddenly, Ms. Febes screamed, "Oh, my God. I just got robbed."[1]

> [1] An examination of Ms. Febes' cash drawer following the robbery showed that it was short $3,303.65. This fact was entered as a stipulation.

Ms. Sims immediately observed a person fleeing the bank. Post incident Sims was shown photographs taken from the bank's surveillance system, and stated that the person depicted in the photographs was the person she saw fleeing the bank. Ms. Sims also provided police with a description of the person approximately five minutes after the robbery occurred.

Detective Steven Jefferson, the assigned investigator, recovered a black leather aviator hat outside the entrance of the bank along with a demand note that read, "Give me your fucking money, no dye packs." Detective Jefferson interviewed [Williams] on March 25, 2013. [Williams] denied involvement in the robbery claiming he had been in Georgia on the day the robbery was committed.

The Commonwealth's key witness was Nicole Lane, [Williams'] former paramour and the mother of two of his children. Lane [was looking at the news online] and in the course of doing so recognized [Williams] as the person depicted in the photograph accompanying the article [about] the purported robber. Lane, employed as a nurse at a correctional facility, reported her observation to her superior at work in accordance with a regulation requiring employees to report any evidence of crime. Lane also identified the hat recovered by police as belonging to [Williams] and also recognized that the handwriting on the demand note was that of [Williams].

Trial Court Opinion, 2/4/15, at 2-3.

The Commonwealth charged Williams with robbery – threatening another or intentionally putting him in fear of bodily injury in the course of committing a theft,[2] theft by unlawful taking,[3] receiving stolen property,[4]

_____

[2] 18 Pa.C.S. § 3701(a)(1)(ii).
*(Footnote Continued Next Page)*

and simple assault.[5]   On February 6, 2014, at the conclusion of a non-jury trial, the court found Williams guilty of theft by unlawful taking and receiving stolen property.   The court also found him guilty of robbery – theft by removing money from a financial institution by making a demand on an employee.

Williams filed a motion for extraordinary relief on February 19, 2014, which the court denied July 11, 2014.   On August 19, 2014, the court sentenced Williams to eleven and one-half to twenty-three months' incarceration plus five years' probation for robbery, followed by two concurrent terms of two years' probation for the theft convictions.

This timely appeal followed, in which Williams raises the following issue for our review:

> Did the trial court improperly convict Williams of robbery as a felony of the second degree under 18 Pa.C.S. § 3701(a)(1)(vi) where he was never charged with this subsection on the bills of information or formal charging documents, the Commonwealth never amended the bills or the charges, and where Williams was never arraigned on this form of robbery?

Appellant's Brief, at 3.

Williams relies, in part, on Pa.R.Crim.P. 564, which provides:

*(Footnote Continued)* ———————————

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3925(a).

[5] 18 Pa.C.S. § 2701(a).

Rule 564.  Amendment of Information

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense.  Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564.

Williams argues the trial court "circumvented the plain language" of the Rule.  **See** Appellant's Brief, at 16.  He maintains that although Rule 564 permits the court to allow amendments requested by the Commonwealth, the court may not amend an information *sua sponte*.  Williams further asserts that the amendment was improper because it occurred after the close of evidence.  However, Rule 564 "is a starting point only . . . because our courts apply the rule with an eye towards its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules."  **Commonwealth v. Grekis**, 610 A.2d 1284, 1289 (Pa. Super. 1992).  "The caselaw sets forth a broader test for the propriety of amendments than the plain language of the rule suggests."  **Commonwealth v. Mosley**, 585 A.2d 1057, 1060 (Pa. Super. 1991).

Our disposition of this matter is informed by **In re D.G.**, 114 A.3d 1091 (Pa. Super. 2015), where this Court noted:

In **Commonwealth v. Mentzer**, 18 A.3d 1200 (Pa. Super. 2011), we set forth our considerations in determining whether the trial court erred in permitting the amendment of the information.

- 4 -

[W]hen presented with a question concerning the propriety of an amendment, we consider:

[w]hether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted. Additionally, [i]n reviewing a grant to amend an information, the Court will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

Further, the factors which the trial court must consider in determining whether an amendment is prejudicial are:

(1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*In re D.G.*, 114 A.3d 1091, 1095 (Pa. Super. 2015) (citations omitted).

Accordingly, the critical issue is whether Williams was prejudiced by the trial court's amendment of the charge of robbery brought against him. Here, the facts underlying the offense of robbery by committing a theft in the course of which the defendant threatened or put another in fear of

- 5 -

immediate serious bodily injury (section 3701(a)(1)(ii)) and robbery by removing money from a financial institution by making a demand of an employee (section 3701(a)(1)(vi)) were the same, namely, handing a demand note to a bank teller with the words, "Give me your fucking money, no dye packs."

Prior to trial, Williams was aware that the Commonwealth had the demand note and intended to enter it into evidence. Accordingly, there was no element of surprise in the introduction of this critical piece of evidence necessary to establish the offense set forth in section 3701(a)(1)(vi).

At trial, Williams presented no evidence. Nevertheless, during his cross-examination of the Commonwealth's witnesses, and in his closing statement, Williams' counsel pursued a defense of mistaken identity. Such a defense was equally applicable to a charge under section 3701(a)(1)(ii) or section 3701(a)(1)(vi).

Because the crime originally charged involved the same basic elements and arose out of the same factual situation as the crime included in the amendment, Williams was on notice regarding his alleged criminal conduct. Accordingly, he was not prejudiced by the court's amendment of the charge. *See In re D.G.*, *supra*.[6]

---

[6] In the statement of questions involved section of his brief Williams also asserts that the trial court improperly denied his post-verdict motion for extraordinary relief. However, he has abandoned that issue. **See** Appellant's Brief, at 27.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/1/2015